1   Sheri L. Kelly, SBN 226993
    E-mail: slk@sherikellylaw.com
2   LAW OFFICE OF SHERI L. KELLY
    31 E. Julian St.
3   San Jose, CA  95112
    Telephone:  (408) 287-7712
4   Facsimile:  (408) 583-4249

5   *Attorney for Plaintiff Scott Feamster*

6

7                **IN THE UNITED STATES DISTRICT COURT**

8                **NORTHERN DISTRICT OF CALIFORNIA**

9

10

11  SCOTT FEAMSTER, on behalf of himself        Case No.:
    and all others similarly situated,

12              Plaintiff,                       **CLASS ACTION COMPLAINT**

13       vs.

14  GACO WESTERN, LLC, d/b/a GACO               **JURY TRIAL DEMANDED**
    WESTERN, a Limited Liability Company, and
15  DOES 1 – 100.

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Scott Feamster ("Plaintiff," or "Feamster") alleges against defendant Gaco Western, LLC, d/b/a Gaco Western ("Gaco Western"), and Does 1-100 (collectively, "Defendants"), as follows:

<b><u>SUMMARY OF THE ACTION</u></b>

1.      Defendant Gaco Western, an international manufacturer of residential and commercial waterproofing and insulating products, describes itself as a "recognized leader in innovative silicon roofing systems," and "insulation solutions for a variety of commercial, industrial, and residential applications [] Gaco Western closed cell spray foam insulation makes complete sense from the moment it bonds to a home."[1]  In November 2015, Plaintiff Scott Feamster purchased Gaco Western's spray foam (commonly known as "SPF") and had it installed in his Atherton, California home, located in the county of San Mateo. The purpose of the spray foam was to provide insulation in Plaintiff's home.

2.      SPF contains numerous reactive chemicals that can cause significant head, lung, and other human system problems even at very low levels of exposure; once an individual becomes sensitized, there may be no safe exposure level.  According to authorities, even low concentrations of certain chemicals contained in SPFs can trigger a severe asthma attack or other respiratory problems, or even a potentially fatal reaction.  SPFs that do not bond can also result in fungi causing health problems as well as structural damage.  Cutting or trimming the foam may also generate dust containing chemicals harmful to the health.

3.      Spray foam, like the Gaco Western foam purchased by Plaintiff, must bond to the surface to which it is applied to perform properly and provide insulation.  Additionally, without bonding, condensate may cause fungi to grow and cause structural damage and health problems.

4.      In March 2016, Feamster's general contractor first observed that the Gaco Western foam had begun to shrink and had not bonded in Feamster's home.  Over a short period of time, the shrinkage and non-bonding continued.  Feamster's general contractor notified the foam

---

[1] https://gaco.com/about-us/.

1

installer.  On April 21, 2016, the foam installer confirmed that the Gaco Western foam had continued to shrink and had not bonded.  On April 28, 2016, two Gaco Western representatives visited Feamster's home and confirmed that the Gaco Western spray polyurethane foam had continued to further shrink and had not bonded; the foam had completely failed.  On about May 12 or 13, 2016, representatives from Gaco Western indicated that the cause of the failed foam was a defect in the product – a formulation error that was present in an entire batch of foam.  Thus, the defect affected both Plaintiff and other consumers.

5.     Gaco Western's new single-pass closed-cell spray foam, used in Plaintiff's home, had recently replaced its older two-pass formula.  Gaco Western knew that the single-pass closed-cell spray foam installed in Feamster's home was defective, but it willfully and consciously failed to notify Feamster – or, on information and belief, any other affected consumers – of the product defect, thus disregarding its customers' rights and safety.

6.     Once Feamster notified Gaco Western of its defective single-pass closed-cell spray foam product, Gaco Western said that it accepted "100% responsibility" for the failed foam, that it would "make everything right," and that it would "pay for all time and materials" to remedy the defective single-pass closed-cell spray foam in Feamster's home, including all deconstruction and reconstruction necessary and any property damage resulting from the rework.  Feamster's general contractor and his heating and air conditioning contractor relied on Gaco Western's representations to commence deconstruction in anticipation of Gaco Western's removal and replacement of its failed single-pass closed-cell spray foam.

7.     On June 2, 2016, Feamster participated in a teleconference with Gaco Western representatives.  During that teleconference, Gaco Western demanded a "time and materials" cost estimate of the deconstruction and reconstruction necessary as a result of removing and replacing its failed single-pass closed-cell spray foam.  Feamster promptly began working with his general contractor and other professionals to develop a detailed cost estimate for the necessary deconstruction and reconstruction.

8.     On June 6, 2016, the foam installer attempted to relieve foam stresses and minimize

2

toxic outgassing by slicing into the failed foam.  Noxious foam fumes and tiny foam particles filled the air.  Consequently, the foam installer ceased work.  Gaco Western's single-pass closed-cell spray foam continued to shrink and emit fumes.  Foam fumes caused Feamster to feel woozy and nauseated.[2]

9.      On June 17, 2016, Feamster provided Gaco Western with a detailed deconstruction and reconstruction cost estimate as requested by Gaco Western.  Gaco Western refused to pay for all of the costs associated with the removal and replacement of its failed spray foam as detailed in this cost estimate.  Throughout the remainder of June 2016, Feamster attempted to reach an acceptable compromise with Gaco Western and settle this matter.  Gaco Western, however, never responded to Feamster's last offer, made in late June 2016.  Consequently, the failed foam is still installed in Feamster's home.

10.     On approximately July 11, 2016, Feamster served a legal notice to Gaco Western pursuant to the California Consumer Legal Remedies Act ("CLRA).  *See* Exhibit A.  Prior to the filing of this Complaint, Gaco Western failed to respond to this notice.

## PARTIES

11.     Plaintiff Scott Feamster, an individual, owns the subject property located at 230 Park Lane, Atherton, California, San Mateo County (the "Property"), in which the defective Gaco Western foam was installed.  Through this action, on behalf of himself and all others similarly situated, Plaintiff seeks relief for property damage sustained as a result of the defective Gaco Western foam installed in his, and Class members', residences, businesses, or other structures.

12.     Defendant Gaco Western LLC, d/b/a Gaco Western, is a limited liability company with administrative offices located in Seattle, Washington, and with research and development offices, and manufacturing, located in Waukesha, Wisconsin.  Gaco Western is registered with the

---

[2] Feamster has filed a complaint, on his behalf only, in the Superior Court of California, San Mateo County, seeking damages for personal injuries arising out of his exposure to the failed Gaco Western foam.  In contrast, this action seeks relief for property and structural damages, on behalf of Feamster and a Class of similarly situated California residents who have the same formulation of Gaco Western Foam installed in their home.

CLASS ACTION COMPLAINT

California Secretary of State to do business in California.

13.     The true names and capacities of Defendants sued as Does 1 through 100 are unknown to Plaintiff at this time.  Plaintiff therefore sues said Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities of Does 1 through 100 when ascertained.  Nevertheless, the Plaintiff is informed and believes, and based thereon alleges, that each of the Doe defendants, jointly and severally, are in some manner responsible for the damages alleged herein.

14.     At all relevant times, each Defendant, including those sued as Does 1-100, was an agent, servant, employee, partner and joint venturer of the other Defendants, and each of them.  At all such times, each Defendant was acting within the course and scope of his relationship as agent, servant, employee, partner or joint venturer of the other Defendants, and each of them.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced in, and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

15.     Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to the Plaintiff, as alleged herein.  In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each Defendant had actual knowledge of the wrongful acts and realized that its conduct would substantially assist the accomplishment of the wrongdoing alleged herein.

16.     Defendants reached an agreement to perform the acts complained of herein; all were direct, necessary, and substantial participants in the conspiracy, common enterprise, and common course of conduct complained of herein; and each was aware of its overall contribution to and furtherance of the conspiracy, common enterprise, and common course of conduct. Defendants' acts of conspiracy include, *inter alia*, all of the acts that each of them is alleged to have committed in furtherance of the wrongful scheme complained of herein.

17.     The Defendants conducted the acts described herein with the affirmative intent to

commit such illegal acts, knowing that the illegal acts would likely cause Plaintiff to sustain

damages, by turning a "blind eye" towards such acts, and/or through other affirmative misconduct,

oppression, fraud, malice, or calculated business decisions that Defendants knew or should have

known to inevitably result in the violations triggering this lawsuit.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action under the Class Action Fairness Act of

2005, 28 U.S.C. §§ 1332(d)(2) and (6), because the aggregate claims of the putative Class

members exceed $5 million, exclusive of interest and costs, and because at least one Plaintiff is a

citizen of a different state than the Defendant.

19.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because all

Defendants are residents of the Northern District of California within the meaning of Sections

1391 (c)(2) and (d).  Each of the Defendants' contacts with the Northern District of California are

sufficient to subject them to personal jurisdiction as if this District were a separate State.  Each of

the Defendants are either foreign entities authorized to conduct business in this District, are doing

business in this District and have registered with the California Secretary of State, do sufficient

business in this District, have sufficient minimum contacts with this District, or otherwise

intentionally avail themselves of the Northern District of California's consumer market through

the promotion, marketing, sale, and service of their products.  Accordingly, this purposeful

availment renders the exercise of jurisdiction by this Court over Defendants and their affiliated or

related entities permissible under traditional notions of fair play and substantial justice.

20.     Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of

the property that is the subject of this action is situated in this District.

## INTRADISTRICT ASSIGNMENT

21.     Pursuant to Local Rules 3-5(b) and 3-2(c), this civil action arose in San Mateo

County, because that is the county in which a substantial part of the events or omissions which

give rise to Plaintiff's claims occurred, and is the county in which a substantial part of the property

CLASS ACTION COMPLAINT

that is the subject of this action is located.  Consequently, pursuant to Local Rule 3-2(d) this action shall be assigned to the San Francisco or Oakland Division of this Court.

### CLASS ALLEGATIONS

22.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23(a)(1)-(4) and (b)(3).

23.     Plaintiff brings this action on behalf of himself and a Class of all other similarly-situated California residents, initially defined as:  All individuals who have Gaco Western foam installed in their California residence, business, or other structure, where such foam is of the same formulation and/or from the same batch as the Gaco Western foam installed in Plaintiff's home. Plaintiff reserves the right to redefine the Class prior to class certification.

24.     Excluded from the Class and any potential subclasses are the Defendants and their officers, affiliates, beneficiaries, directors, employees, agents, and the immediate family members of their officers, directors, beneficiaries, agents, and employees.

25.     The members of the Class are sufficiently numerous that joinder of all members would be unfeasible and not practicable.  Although the exact number of Class members is unknown, on information and belief the Class consists of at least 40 members, and likely contains many more.  The identities of the members of the class are within the exclusive knowledge of and can only be ascertained by resort to the records of Defendants.

26.     The Class is ascertainable and shares a well-defined community of interest in questions of law and fact because the Defendants infringed and violated, in similar fashion, the rights of each Class member.  The Class suffered from the same breaches of the California Consumer Legal Remedies Act, California Business and Professions Code, express warranty, implied warranty of merchantability, negligence, strict products liability, fraud, negligent misrepresentation and unjust enrichment of Defendants.  The defective Gaco Western foam complained of herein is common to all Class members.

27.     The common questions of law and fact as to the Class predominate over questions

CLASS ACTION COMPLAINT

affecting only individual Class members.  The common questions of law and fact include, without limitation:

    a.   Whether the Gaco Western foam installed in Plaintiff and the Class members' homes and businesses is defective;

    b.   Whether Defendants knew of should have known of the defective nature of the Gaco Western foam;

    c.   Whether Defendants owed Plaintiff and the Class a duty to inform them of the defective nature of the Gaco Western foam;

    d.   Whether Defendants owed a duty to Plaintiff and the Class to exercise reasonable care in the formulation, manufacture, and marketing of the Gaco Western foam;

    e.   Whether Defendants breached this duty;

    f.   Whether the Gaco Western foam installed in Plaintiff and the Class members' homes and businesses failed to perform in accordance with the reasonable expectations of ordinary consumers;

    g.   Whether the Gaco Western foam failed to perform for the time warranted by Defendants; and

    h.   Whether Plaintiff and the Class suffered damages as a result of Defendants' conduct.

28.    The Plaintiff's claims are typical of the claims of all members of the Class as described herein.  The Plaintiff, as the representative party, will fairly and adequately protect the interests of the Class by vigorously pursuing the suit through the Plaintiff's attorneys who are sufficiently skilled and experienced.  The individually named Plaintiff has no interests antagonistic to those of other Class members.

29.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, Class members cannot realistically afford to seek legal redress individually for the claims alleged herein.

7

1  Therefore, absent a class action, members of the Class have no realistic likelihood of recovering

2  their damages, and the wrongful practices alleged herein will continue unabated.

3      30.    Even if members of the Class could afford to pursue individual litigation,

4  individualized litigation would significantly increase the delay, burden, and expense to all parties

5  and to the Court. Individualized litigation would also create the potential for inconsistent or

6  contradictory rulings. In contrast, a class action presents far fewer management difficulties, allows

7  claims to be heard which might otherwise go unheard because of the relative expense of bringing

8  individual lawsuits, and provides the benefits of adjudication, economies of scale and

9  comprehensive supervision by a single court. Thus, a class action will allow redress for many

10  persons whose claims would otherwise be too small to litigate individually. There will be no

11  difficulty in the management of this action as a class action.

12  **ESTOPPEL FROM PLEADING AND TOLLING**

13  **OF APPLICABLE STATUTES OF LIMITATION**

14      31.    Because the defects in the Gaco Western foam complained of herein are latent and

15  not detectable until after manifestation, Plaintiff and the Class were not reasonably able to

16  discover the defects in the Gaco Western foam until after installation, despite their exercise of due

17  diligence.

18      32.    On information and belief, Gaco Western knew that the foam sold to Plaintiff and

19  the Class was defective prior to the time of sale, and concealed that material information from

20  Plaintiff and the Class.

21      33.    As such, any applicable statutes of limitation have been tolled by Gaco Western's

22  concealment of material facts and Gaco Western is estopped from relying on any such statutes of

23  limitation.

24  **FIRST CLAIM FOR RELIEF**

25  **(Violation of the California Consumer Legal Remedies Act )**

26      34.    Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

27      35.    The conduct described above and throughout this Complaint took place within the

28

8

State of California and constitutes unfair methods of competition or unfair or deceptive acts or practices in violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code § 1750, *et seq.*

36.     The CLRA applies to all claims of all the Class members because the conduct violating the CLRA by Defendant occurred within the State of California.

37.     Plaintiff and members of the Class are "consumers" as defined by Civil Code § 1761(d).

38.     Gaco Western is a "person" as defined by Civil Code § 1761(c).

39.     The Gaco Western foam that is the subject of this Complaint qualifies as a "good" as defined by Civil Code § 1761(a).

40.     Plaintiff's and the Class members' purchases of the Gaco Western foam and/or homes or structures on which the Gaco Western foam is installed, are "transactions" as defined by Civil Code § 1761(e).

41.     The CLRA deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer as unlawful:

    a.  C.C. § 1770(a)(2), which prohibits any person from misrepresenting the "source, sponsorship, approval, or certification of goods or services;"

    b.  C.C. § 1770(a)(5), which prohibits any person from representing that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;"

    c.  C.C. § 1770(a)(7), which prohibits any person from representing "that goods or services are of a particular standard, quality, or grade … if they are of another;"

    d.  C.C. § 1770(a)(14), which prohibits any person from representing "that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;" and

    e.  C.C. § 1770(a)(16), which prohibits any person from representing "that the subject of a transaction has been supplied in accordance with a previous representation

1    when it has not."

2    42.    By virtue of the conduct described throughout this complaint, defendants have

3    violated the foregoing provisions of the CLRA.

4    43.    Plaintiff, on behalf of himself and the Class, demands that a permanent injunction

5    be issued against Defendants to enjoin them from the continued advertising and sale of defective

6    Gaco Western foam, and force Defendants to notify all Class members of the defective foam and

7    offer repair or replacement.

8    44.    Plaintiff also seeks damages on behalf of himself and the Class, in an amount to be

9    proven at trial.

10    **SECOND CLAIM FOR RELIEF**

11    **(Violation of the California Business and Professions Code)**

12    45.    Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

13    46.    Defendants' conduct as described herein in manufacturing, designing, engineering,

14    fabricating, assembling, constructing, testing, examining, distributing, and/or marketing the

15    defective Gaco Western foam, as well as its violation of the CLRA and common law, was an

16    unfair, unlawful, or fraudulent business practice in violation of the California Business and

17    Professions Code § 17200.

18    47.    Plaintiff and the Class have been injured and have suffered loss of money or

19    property as a result of Defendants' unfair, unlawful, and/or fraudulent business acts and practices.

20    48.    As a direct and proximate result of Defendants' unfair, unlawful or fraudulent

21    business practices as set forth above, Defendant has been unjustly enriched by Plaintiff and the

22    Class members' payment of consideration in the purchase of the Gaco Western foam.  As such,

23    Plaintiff and the Class are entitled to restitution of all consideration paid to Defendants.

24    49.    Plaintiff also requests appropriate injunctive relief to prevent Defendants from

25    taking advantage of purchasers of the Gaco Western foam in such a fashion as Defendants did in

26    manufacturing and selling the Gaco Western foam to Plaintiff and Class members, and failing to

27    notify the Class of the defective foam and failing to repair and/or replace it.

28

### **THIRD CLAIM FOR RELIEF**

### **(Breach of Express Warranty)**

50. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

51. In conjunction with its sale of the defective Gaco Western foam to Plaintiff and the Class, Gaco Western warranted that it would provide an operational product for a particular warranty period or repair or replace the defective product.

52. Defendants breached the express warranties because, as set forth in detail above, they failed to provide Plaintiff and the Class with a product that would perform the basic intended and essential functions of foam products for the specified warranty period.

53. Gaco Western has received notice of the breaches of warranty alleged herein, by virtue of its express admissions that it knew that the foam purchased by Plaintiff and the Class was defective, and by virtue of Feamster notifying Gaco Western of the defect.

54. Defendants have failed to provide Plaintiff and the Class, as a warranty replacement, foam products that conform to the qualities and characteristics that Defendants have expressly warranted are possessed by Gaco Western foam.

55. Despite requests to do so, Gaco Western refuses to adequately repair or replace its foam in accordance with warranty terms. As a result, Plaintiff and members of the Class were forced and continue to be forced to wait for the substantially certain failure of their foam products and suffer the accompanying losses of money associated therewith.

56. Further, the warranties themselves are unconscionable and unenforceable in that they fail to achieve their specified purpose because they do not provide consumers with an adequate remedy for the failure of the Gaco Western products. The warranties do not provide the means for purchasers to repair and replace either the defective product itself, or structural damages to their homes associated with and caused by these defects. Applying any warranty limitation to avoid the need to repair the defects set forth herein would be unconscionable in that, inter alia, the foam products contain inherent defects that were already existing at the time of purchase and Defendants knew, or were reckless in not knowing, about the defects, which could not be

1   discovered by Plaintiff and the Class at the time of purchase, and purchasers lacked any

2   meaningful choice with respect to the warranty terms.

3   57.     As a direct and proximate result of Defendants' breach of warranty, Plaintiff and

4   the Class have suffered damages in an amount to be determined at trial.

5   **FOURTH CLAIM FOR RELIEF**

6   **(Breach of Implied Warranty of Merchantability)**

7   58.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

8   59.     An implied warranty of merchantability arises automatically when the product is a

9   "good" and the seller is a merchant in the business of furnishing the product to the consumer.  The

10  foam products at issue here are goods and Gaco Western is a merchant in the business of selling

11  such foam products to consumers.  Accordingly, all of Gaco Western's foam products come

12  within the implied warranty of merchantability.

13  60.     An implied warranty of merchantability provides that the product is of

14  merchantable quality and fit for its ordinary and intended use.

15  61.     Gaco Western breached the aforementioned implied warranty of merchantability

16  because the Gaco Western foam products sold to Plaintiff and the Class were not of merchantable

17  quality or fit for their ordinary or intended use.

18  62.     Gaco Western breached the aforementioned implied warranty of merchantability

19  because the Gaco Western foam sold to Plaintiff and the Class was not of merchantable quality or

20  fit for their ordinary and intended use and because the Gaco Western foam sold to Plaintiff and the

21  Class contained a defect at the time of its sale that resulted in, and continues to result in, premature

22  deterioration in the form of shrinkage, peeling, and other failure when used in a normal,

23  foreseeable and customary way.

24  63.     The defects at issue are latent defects.  Plaintiff and the Class members could not

25  have known about the Gaco Western foam's propensity for premature deterioration.

26  64.     As a direct and proximate result of Defendants' breach of the implied warranty of

27  merchantability, Plaintiff and the Class have suffered damages in amounts to be determined at

28

1  trial.

2                              **FIFTH CLAIM FOR RELIEF**

3                                    **(Negligence)**

4        65.    Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

5        66.    Defendants owed a duty to Plaintiff and the Class to exercise reasonable care in the

6  design, manufacture, quality control and marketing of the Gaco Western foam sold to Plaintiff and

7  the Class.

8        67.    Defendants breached their duty to Plaintiff and the Class by designing,

9  manufacturing, advertising, selling and warranting a defective product to Plaintiff and Class

10  members, and by failing to take those steps necessary to repair or otherwise discontinue selling a

11  defective product to Plaintiff and the Class.

12       68.    Defendants were aware, or reasonably should have been aware, that the Gaco

13  Western foam sold to Plaintiff and the Class was defective and did not perform its intended use.

14       69.    When they purchased Gaco Western's foam, Plaintiff and the Class were not aware

15  of its defective nature.

16       70.    As a direct and proximate cause of the foregoing, Plaintiff and the Class have

17  suffered and will continue to suffer damages and economic loss described fully above, in an

18  amount to be proven at trial.

19       71.    Plaintiff and the Class are entitled to damages in an amount to be determined at

20  trial.

21                              **SIXTH CLAIM FOR RELIEF**

22                              **(Strict Products Liability)**

23       72.    Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

24       73.    At all times during the Class period, Gaco Western was a commercial manufacturer

25  and supplier of the foam products at issue in this case.

26       74.    Gaco Western's foam products that were sold to Plaintff and the Class were

27  expected to, and did, in fact, reach consumers without substantial change in the condition in which

28

                                              13

they were supplied.

75.     Gaco Western's foam products sold to Plaintiff and the Class were and are defective, and were and are unfit for their intended use.

76.     The foam products sold to Plaintiff and the Class fail to perform in accordance with the reasonable expectations of Plaintff and the Class and the benefits of the design of the foam does not outweigh the risk of its failure.

77.     Defendants have/had a duty and responsibility to disclose to the consuming public the foreseeable risks associated with the use of the foam products sold to Plaintiff and the Class. Gaco Western further has/had a duty not to put defective products on the market.

78.     Defendants breached their duty to Plaintff and the Class by failing to disclose the defects associated with the foam products, and by allowing the sale and use of the foam products when they knew they would not perform as intended.

79.     As a result of the foregoing, Plaintiff and the Class have suffered damages as previously set forth herein that were directly and proximately caused by the defective foam products.

80.     Plaintiff and the Class are entitled to damages in an amount to be determined at trial.

### SEVENTH CLAIM FOR RELIEF

### (Unjust Enrichment)

81.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

82.     As the intended and expected result of its wrongdoing, Defendants have profited and benefited from the purchase of foam products by Plaintiff and the Class.

83.     Defendants have voluntarily accepted and retained these profits and benefits, derived from Plaintiff and the Class, with full knowledge and awareness that, as a result of their misconduct, Plaintiff and the Class were not receiving products of the quality, nature, fitness or value that had been represented by Defendants, and that Plaintiff and the Class, as reasonable consumers, expected.

14

84.    Defendants have thus been unjustly enriched at the expense of Plaintiff and the Class.

85.    Plaintiff and the Class seek the disgorgement and restitution of Gaco Western's wrongful profits, revenue, and benefits, to the extent and in the amount deemed appropriate by the Court, and such other relief as the Coiurt deems just and proper to remedy Defendants' unjust enrichment.

## EIGHTH CLAIM FOR RELIEF

### (Fraudulent Misrepresentation, Concealment and Failure to Disclose)

86.    Plaintiff realleges and incorporates by reference each of the paragraphs above.

87.    At all relevant times, Defendants knowingly, fraudulently, and actively misrepresented, omitted and concealed from Plaintiff, the Class, and consumers material facts relating to the quality of its spray foam.

88.    Defendants had a duty to disclose to Plaintiff and the Class the actual quality of its foam product.

89.    The misrepresentations, omissions, and concealments complained of herein were material and were made on a uniform and market-wide basis.  As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiff and the Class has been damaged, as alleged herein.

90.    Plaintiff and the Class reasonably and actually relied upon Defendants' representations, omissions, and concealments.  Such reliance may also be imputed, based upon the materiality of Defendants' wrongful conduct.

91.    Based on such reliance, Plaintiff and the Class purchased foam products from Gaco Western and, as a result suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

92.    Had Plaintiff and the Class been aware of the true nature of Gaco Western's business practices, they would not have purchased foam products from Gaco Western.

93.    Defendants' acts and misconduct, as alleged herein, constitute oppression, fraud

15

and/or malice, entitling Plaintiff and the Class to an award of punitive damages to the extent allowed in an amount appropriate to punish or to set an example of Gaco Western.

### NINTH CLAIM FOR RELIEF

### (Negligent Misrepresentation)

94.     Plaintiff realleges and incorporates by reference each of the paragraphs above.

95.     At all relevant times, Defendants negligently and/or recklessly misrepresented, omitted and concealed from Plaintiff and the Class material facts relating to the quality of its foam product.

96.     Defendants had a duty to disclose to Plaintiff and the Class the actual quality of its foam product.

97.     The misrepresentations, omissions and concealments complained of herein were negligently or recklessly made to Plaintiff, the Class, and the general public on a uniform and market-wide basis.  As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiff and the Class has been damaged, as alleged herein.

98.     Plaintiff and the Class reasonably and actually relied upon Defendants' representations, omissions and concealments.  Such reliance may also be imputed, based upon the materiality of Defendants' wrongful conduct.

99.     Based on such reliance, Plaintiff and the Class purchased foam products from Gaco Western and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

100.     Had Plaintiff and the Class been aware of the true nature of Gaco Western's business practices, they would not have purchased foam products from the company.

101.     Defendants' acts and misconduct, as alleged herein, constitute oppression, fraud and/or malice, entitling Plaintiff and the Class to an award of punitive damages to the extent allowed in an amount appropriate to punish and set an example of Defendants.

102.     Plaintiff and the Class is entitled to damages and other relief as set forward below.

### PRAYER FOR RELIEF ON BEHALF OF PLAINTIFF AND THE CLASS

1    Plaintiff, on behalf of himself and the Class prays that this case be certified and maintained

2  as a class action and for judgment to be entered upon Defendants for Plaintiff's and the Class'

3  property damage as follows:

4    a.  For economic and compensatory damages;

5    b.  For restitution;

6    c.  For actual damages sustained or treble damages;

7    d.  For punitive damages;

8    e.  For injunctive and declaratory relief;

9    f.  For reasonable attorneys' fees and reimbursement of all costs for the prosecution of

10      this action; and

11    g.  For such other relief as this Court deems just and appropriate.

12                      **JURY TRIAL DEMANDED**

13    Plaintiff and the Class demand a trial by jury on all issues so triable.

14

15  Dated: February 28, 2018            Respectfully submitted,

16                      LAW OFFICE OF SHERI L. KELLY

17

18                      */s/ Sheri L. Kelly*
                        Sheri L. Kelly
19                      LAW OFFICE OF SHERI L. KELLY
                        31 E. Julian St.
20                      San Jose, CA 95112
                        Telephone:  (408) 287-7712
21                      Facsimile:  (408) 583-4249
                        slk@sherikellylaw.com

22                      *Counsel for Plaintiff Scott Feamster*

23

24

25

26

27

28

# EXHIBIT A

# LAW OFFICE OF SHERI L. KELLY

31 E. Julian St.   San Jose, CA 95112
**Tel** 408/287-7712     **Fax** 408/583-4249                                                      www.sherikellylaw.com

July 11, 2016

**VIA CERTIFIED MAIL**

Gaco Western, LLC                                   Gaco Western, LLC
c/o CT Corporation System                    200 W. Mercer St., Ste. 202
818 West Seventh Street, Ste. 930         Seattle, WA 98119
Los Angeles, CA 90017

    I represent Scott Feamster, who had Gaco Western foam installed in his home in November 2015.  Mr. Feamster's home is located at 230 Park Lane in Atherton, California.  This letter serves as Mr. Feamster's notice, pursuant to the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1782, that Gaco Western has employed or committed methods, acts, and practices declared unlawful by the CLRA, California Civil Code ("C.C.") § 1770, in connection with the Gaco Western foam installed in Mr. Feamster's home.

    As detailed in this letter, unless Gaco Western corrects, repairs, replaces, or otherwise rectifies the goods and services in violation of Section 1770 of the CLRA within 30 days, Mr. Feamster will file a lawsuit for damages under section 1780 of the CLRA, on behalf of himself and all others similarly situated.

    Gaco Western has violated the following sections of the CLRA: (1) C.C. § 1770(a)(2), which prohibits any person from misrepresenting the "source, sponsorship, approval, or certification of goods or services;" (2) C.C. § 1770(a)(5), which prohibits any person from representing that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;" (3) C.C. § 1770(a)(7), which prohibits any person from representing "that goods or services are of a particular standard, quality, or grade … if they are of another;" (4) C.C. § 1770(a)(14), which prohibits any person from representing "that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;" and (16) C.C. § 1770(a)(16), which prohibits any person from representing "that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

    Mr. Feamster had Gaco Western foam installed in his home in November 2015.  In March 2016, Mr. Feamster's general contractor observed foam shrinkage and non-bonding and became concerned when the shrinkage continued.  Gaco Western employees investigated and confirmed Gaco Western's failed foam in Mr. Feamster's home on April 28, 2016.  Since that April inspection, Gaco Western's foam has continued to deteriorate, shrink, and emit toxic fumes and particulates.  The toxic fumes and particulates have caused Mr. Feamster and workers in his home to suffer adverse physical symptoms.  Mr. Feamster has been in contact with Gaco

1

Western numerous times to reach a resolution.  Despite assuring Mr. Feamster it would "make everything right," Gaco Western has failed to remedy this situation.

Other homeowners with the same defective foam installed in their home are also entitled to relief as a result of Gaco Western's violations of the CLRA, as detailed herein.  Gaco Western has admitted that the foam installed in Mr. Feamster's home is not unique to Mr. Feamster.

To avoid filing an action against Gaco Western on behalf of himself and all others similarly situated, Mr. Feamster demands that Gaco Western do all of the following: (1) notify all homeowners with defective foam batches, and offer all such homeowners repair or replacement of the foam; (2) pay for all labor and materials to perform deconstruction and reconstruction for Mr. Feamster's home: general contractor (Greg Vickerman), heating and cooling system (Cathy Haire), home system, security system, property damage, and others to be determined; (3) pay for all labor and materials to perform refoaming: contingent on a written work proposal that is approved in advance by Michael Morgan, Greg Vickerman, Cathy Haire, and Mr. Feamster, pay for all labor and materials associated with Michael Morgan's removal of all Gaco failed foam as necessary per tests that measure bonding, emissions, and any other relevant performance factors and replacement with 4-1/4" R30 foam in attics and with 2-1/2" R19 foam in the crawlspace, with a standard Gaco Western warranty; (4) pay for any and all costs associated with medical monitoring: Mr. Feamster, Ms. Feamster, and all workers in the Feamster's home; and (5) pay for all labor and materials to assess, repair, and replace physical damage: e.g., walls and floors, heating and ventilating system, home system, security system, and personal property.

Please contact me directly at 408/287-7712, or at slk@sherikellylaw.com, to discuss further.

Very Truly Yours,

Sheri L. Kelly

Cc:  Tom Sojak (via e-mail)
       Dan Nelson (via e-mail)
       Michael Morgan (via e-mail)
       Scott Feamster (via e-mail)